Alexander A. Wheatley, OSB #105395
awheatley@fisherphillips.com
Stephen M. Scott, OSB #134800
smscott@fisherphillips.com
FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262 Telephone
(503) 242-4263 Facsimile

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ACARA SOLUTIONS, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>RACHAEL FISHEL; BALANCE STAFFING WORKFORCE LLC; RADHIKA THUSOO; and ALANA ALCINI,<br><br>                Defendants. | Case No. 3:22-cv-00078<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint against Rachael Fishel, Balance Staffing Workforce LLC ("Balance Staffing"), Radhika Thusoo, and Alana Alcini (collectively "Defendants"), Plaintiff Acara Solutions, Inc. ("Acara") alleges as follows:

## PARTIES AND JURISDICTION

1.

Acara is a New York corporation registered to conduct business in Oregon with its principal place of business in Williamsville, New York.

Page 1 -    COMPLAINT

FP 42854376.1

2.

Defendant Balance Staffing is a limited liability company organized under the laws of the state of California, with its principal place of business located at 2800 N Cherryland Ave, Stockton, CA 95215.

3.

Defendant Rachael Fishel ("Fishel") is an individual who, upon information and belief, is a resident of Portland, Oregon and is over the age of 18.

4.

Defendant Radhika Thusoo ("Thusoo") is an individual who, upon information and belief, is a resident of California and is over the age of 18.

5.

Thusoo is employed by Balance Staffing as the Director of Recruiting Process & Trainings.

6.

Defendant Alana Alcini ("Alcini") is an individual who, upon information and belief, is a resident of California and is over the age of 18.

7.

Alcini is employed by Balance Staffing as the VP of Operations.

8.

Personal jurisdiction and venue are proper in this Court because Defendants regularly conduct substantial business activities in Oregon; Defendants engaged in unlawful conduct in Oregon which has caused harm to Acara; and because Acara's various causes of action arose, in whole or in part, in Oregon.

9.

The Court has subject matter jurisdiction over Acara's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Acara's state law causes of action under 28 U.S.C. § 1367.

Page 2 -    COMPLAINT

10.

This court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is more than $75,000.

11.

Venue is proper in this Court because the claims arose in this judicial district.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.** **Background and business of Acara.**

12.

Acara is a premier provider of talent and recruiting solutions. It is an industry leading staffing agency that customizes its process to meet its customers' needs.

13.

Acara has offices nationwide, including an Oregon office location at 13535 SW 72nd Ave, #135, Tigard, Oregon 97223.

14.

Acara requires that its client and business information be kept strictly confidential by its employees.

15.

Acara rigorously maintains the confidentiality of its business information because the information provides Acara with a competitive advantage in the marketplace from which Acara derives economic value.

16.

A competitor could use Acara's information to unfairly price its products and services, poach employees, move business and longstanding client relationships away from Acara, and obtain an unfair advantage in its development of products and services.

17.

Acara utilizes secure database systems to store and maintain much of its confidential, proprietary and trade secret information.

Page 3 -    COMPLAINT

18.

Acara strictly limits access to its secure systems to its employees with a need to know the information accessed.

19.

Acara takes a number of steps to ensure that its employees protect the information on Acara's secure systems (including Acara's trade secrets and confidential information) and that its employees do not use or disclose that information.  Those steps include: (a) handbook and IT policies; (b) physical security to protect against the disclosure of sensitive materials to third parties or Acara employees who do not have a business need to access the materials; and (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

20.

Acara also maintains policies to protect its confidential information, which further describe the company's computer security requirements and prohibit unauthorized use of Acara information and systems for personal gain or in competition with Acara.

B.     **Background on Individual Fishel's Employment with Acara.**

21.

Acara (formerly known as Superior Talent Resources) hired Fishel in 2016. As a condition of her employment with Acara, Fishel entered into an Employment Agreement ("Employment Agreement").  A true and accurate copy of the Employment Agreement is attached hereto as Exhibit A.

///

///

///

///

///

///

Page 4 -      COMPLAINT

22.

The Employment Agreement contains the following prohibition on the disclosure and use of Acara's Confidential Information:

> 2.    NON-DISCLOSURE OF INFORMATION.  Employee acknowledges that in the performance of their job duties they may be entrusted with and come to know confidential information relating to details of marketing, merchandising, pricing methods, recruiting, specialized techniques, specialized account development and specialized business procedures of Company, as well as of Company's business accounts and Employee acknowledges the same to be secret and confidential and agrees that they will not disclose nor disseminate such information to others, either directly or indirectly, except as may be required in the performance of their duties for Company.

23.

The Employment Agreement contains the following restrictive covenants on the disclosure and use of the confidential information of third parties:

> 7.    RESTRICTIVE COVENANT.    In the event Employee's employment is terminated with the Company by either Company or Employee, it is agreed as follows:
>
> a.    All documents, records, customer lists, resumes of personnel, notebooks, summaries or any other business records, or copies of the same in Employee's possession, whether prepared by them or others, shall be deemed to be the property of Company and shall be returned to and left with Company.
>
> c.    Employee shall not in any way disclose or disseminate to any person, firm, association, or corporation for their benefit, or another's benefit, any and all confidential or secret information including without limitation, customer pricing formulas or formats, customer lists, employee lists or employee resumes/applications or data sheets acquired by them during their employment with the Company, including, but not limited to, information as defined in Paragraph 2 above.
>
> e.    For a period of one year after termination, Employee shall not, directly or indirectly, for themselves or on behalf of, or as an employee of, any other person, firm, association or corporation, use, utilize or otherwise profit from the accounts or customer lists, or the resumes or employee lists of the Company.
>
> f.    For a period of one year after termination, Employee shall not in any way interfere with, solicit, or affect Company's relationship with or contracts with, any previous, current, or prospective customer accounts of the Company, of which they gained knowledge by dealing with such accounts as an Employee, or learned of by reason of access to or by reason of copying or memorizing, customer or account lists of the Company.  This Section and this restriction shall apply to any account serviced by, gained information on, or worked on in any matter by Employee during their

employment, whether or not such account is within the seventy-five (75) mile radius of Portland, Oregon.

g.   For a period of one year after termination, Employee shall not, in any way, interfere with, solicit, or affect Company's relationship with any of the past, present or future employees of the Company, knowledge of whom or contact with occurred during the Employee's employment, or in the alternative, knowledge of which occurred by reason of Employee's access to resumes and employee lists maintained by the Company while they were employed by the Company.  The restrictive covenant shall not be limited to the seventy-five (75) mile radius of Portland, Oregon.

24.

Upon information and belief, in or about fall of 2021, Defendants began to discuss Fishel leaving Acara and join Balance Staffing.

25.

During discussions related to Fishel joining Balance Staffing, Defendants began to develop a plan regarding what confidential, proprietary and/or trade secret files Fishel could bring with her to Balance Staffing.

26.

On October 11, 2021, Fishel received an offer letter from Balance Staffing with a tentative start date of October 25, 2021.

27.

Despite having Thusoo's work email, on October 12, 2021, Fishel texted Thusoo asking her for her email address, to which Thusoo responded "radthusoo@yahoo.com." On the same day, Fishel then sent to Thusoo's personal email Acara's confidential, proprietary and/or trade secrets.

28.

On October 14, 2021, Thusoo texted Fishel indicating that Alcini wanted "the headcount report too," because "[t]hat was what we were missing." In response, Fishel texted Thusoo, "Emailed the lam and Edwards to myself last night," and that she had just completed her exit interview.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

29.

Unbeknownst to Acara at the time, Fishel had accessed, previewed and/or downloaded several confidential, proprietary and/or trade secret files of Acara and forwarded these documents to herself and Thusoo's personal email:



FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 42854376.1

30.

Subsequently, on October 23, 2021, Thusoo set up a meeting with Tyson Scott, Chief Operations Officer of Balance Staffing, to discuss Acara's confidential, proprietary and/or trade secret that Fishel took.

**C.    Acara's demand for return of its trade secrets.**

31.

On or about November 29, 2021, after discovering Defendants' unlawful conduct and while still investigating the full scope of Defendants' misappropriation of its trade secrets, Acara sent Cease and Desist letters to Fishel and Balance Staffing in which Acara informed each of them that it had reason to believe they had improperly downloaded and/or appropriated Acara's trade secret information and were using it to unfairly compete with Acara.  A true and correct copy of the Cease and Desist letters are attached hereto as Exhibit B.

32.

Acara's Cease and Desist letter requested that Defendants immediately cease using or disclosing Acara's confidential information and trade secrets, return all documents and electronic files containing such information to Acara.  See Exhibit B, Cease and Desist letter.

33.

On December 2, 2021, Balance Staffing responded by denying that Defendants had engaged in any improper conduct.

34.

On December 3, 2021, Fishel responded by asking for next steps to get the issue resolved. Subsequently, Fished turned over her personal devices to a forensic examiner to determine the scope of Fishel's use and/or disclosure of the confidential, proprietary and trade secret information of Acara to Balance Staffing and its employees.

///

///

Page 8 -    COMPLAINT

35.

The forensic examination confirmed Fishel's intentional improper use and/or disclosure of the confidential, proprietary and trade secret information of Acara to Balance Staffing and its employees.

## FIRST CLAIM FOR RELIEF
### PRELIMINARY AND PERMANENT INJUNCTION
### (FISHEL AND BALANCE STAFFING)

36.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

37.

Fishel was an employee of Acara and, in her capacity as an employee, had access to certain confidential, proprietary and trade secret information of Acara.

38.

Prior to her departure from Acara, Fishel accessed and/or downloaded files containing the confidential, proprietary and trade secret information of Acara.

39.

In or about October 2021, Fishel began working at Balance Staffing, which provides business services in direct competition with Acara.

40.

Upon information and belief, Fishel is currently employed by Balance Staffing.

41.

Fishel is actively soliciting past and/or current Acara clients and/or employees on behalf of Balance Staffing.

42.

Defendants are in possession of confidential, proprietary and trade secret information of Acara, including, but not limited to, information regarding Acara clients and customers and clients' proprietary information.

Page 9 -     COMPLAINT

43.

Upon information and belief, Defendants have used and/or disclosed the confidential, proprietary and trade secret information of Acara to enable Defendants to lure Acara's clients and employees away from Acara and to Balance Staffing, and to otherwise provide Balance Staffing with an unfair advantage in starting its operations in Oregon.

44.

In the absence of injunctive relief, Acara will suffer irreparable harm, including, but not limited to, loss of customers and clients, loss of customer confidence, loss of employees, disclosure of customer and client information to a competitive firm, loss of goodwill and business reputation, and unknown economic loss.

45.

Acara has no adequate remedy at law.

46.

The potential harm to Acara if Defendants are not enjoined is far greater than any harm Defendants may suffer if injunctive relief is not granted.

47.

Acara is likely to prevail on the merits of its cause of action against Defendants.

48.

The public interest weighs in favor of granting injunctive relief.

## SECOND CLAIM FOR RELIEF
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF DEFEND TRADE SECRETS ACT (18 U.S.C. § 1831 *ET SEQ.*) (FISHEL AND BALANCE STAFFING)

49.

Acara incorporates by reference its allegations set forth in its Complaint as if fully set forth herein.

///

///

Page 10 -    COMPLAINT

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

50.

The files and data downloaded by Fishel prior to her departure from Acara, and subsequently disclosed to Balance Staffing, are trade secrets of Acara subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

51.

The information contained in these files and data is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. Acara has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

52.

The information contained in these files and data is related to products or services used in, or intended for use in, interstate commerce.

53.

Acara takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include: (a) handbook and IT policies; (b) restricting availability of certain confidential information to key employees; (c) requiring employees to execute agreements with confidentiality provisions and restrictive covenants; (d) physical security measures to protect against the disclosure of sensitive materials to third parties; (e) and IT security measures, such as password protection.

54.

Fishel obtained the information contained in these files and data by improper means in violation of her contractual and other obligations to Acara.

55.

Defendants' foregoing conduct constitutes an actual and threatened misappropriation and misuse of Acara's trade secret information in violation of the DTSA.

///

///

Page 11 -    COMPLAINT

56.

Fishel improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) to Balance Staffing the confidential business information, customer specific project information, and project proposals contained in the downloaded files and data they took from Acara without authorization to do so.

57.

Fishel engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Fishel owed and continues to owe Acara as a former agent, employee and representative of Acara.

58.

As a direct and proximate result of Fishel's actual and threatened misappropriation of Acara trade secrets, Acara has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Acara.

59.

As a direct and proximate result of Defendants' misappropriation, Acara has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.

60.

Each of the acts of misappropriation was done maliciously by Defendants, thereby entitling Acara to exemplary damages to be proved at trial.

///

///

///

///

///

Page 12 -    COMPLAINT

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

### THIRD CLAIM FOR RELIEF

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF
OREGON UNIFORM TRADE SECRETS ACT (ORS 646.461 – 646.473)
(AGAINST ALL DEFENDANTS)**

61.

Acara incorporates by reference its allegations set forth in its Complaint as if fully set forth herein.

62.

Acara's files and information regarding its customers, projects, and the other highly confidential business and financial information described above are trade secrets of Acara subject to protection under the Oregon Uniform Trade Secrets Act because Acara derives independent economic value from such information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

63.

Acara took reasonable precautions under the circumstances to protect its trade secrets, and all parties with access to its trade secrets (including Fishel) were subject to obligations to maintain their secrecy.

64.

Fishel, as an employee of Acara, had access to information that consisted of Acara's trade secrets, including, but not limited to, compilations of Acara's customers with information relating to specific projects, types of services provided, and contact information.

65.

Defendants knew that Fishel had an obligation to maintain the confidentiality of Acara's trade secret information, and that Acara had taken reasonable measures to maintain the confidentiality of this information as evidenced, among other things, by Acara's Employment Agreement with Fishel and Acara's internal policies.

Page 13 -    COMPLAINT

66.

Defendants willfully and maliciously misappropriated Acara's trade secrets by, among other acts, using and disclosing Acara's trade secrets without authorization (express or implied) at a time they knew or had reason to know that Fishel had a duty to Acara to maintain the secrecy and confidentiality of the trade secrets.

67.

As a direct and proximate result of Defendants' misappropriation of Acara's trade secrets, Acara has suffered and will continue to suffer damages.

68.

The actions of Defendants were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Acara.

### FOURTH CLAIM FOR RELIEF
#### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)
#### (ALL DEFENDANTS)

69.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

70.

The federal Computer Fraud and Abuse Act ("CFAA") prohibits actions whereby a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . .." 18 U.S.C.A. § 1030(a)(4). The CFAA defines a "protected computer" as a computer that "is used in interstate or foreign commerce or communication." 18 U.S.C.A. § 1030(e)(2)(B).

71.

Sections (a)(5)(A)(i), (a)(5)(A)(iii) and (a)(5)(B)(i) of the CFAA similarly prohibit actions whereby a person "knowingly causes the transmission of a program, information, code, or

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

command" or "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage . . ." 18 U.S.C.A. §§ (a)(5)(A)(i), (a)(5)(A)(iii) and (a)(5)(B)(i).

72.

The CFAA provides that a person who accesses a computer with authorization, nevertheless "exceeds authorized access" if he uses his access "to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." 18 U.S.C.A. § 1030(e)(6).

73.

A "loss" is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030(e)(11).

74.

While Thusoo and Alcini were employed by Balance Staffing and acting as an agent for themselves and/or Balance Staffing, they intentionally and improperly accessed and obtained computer files when they instructed Fishel to download and provide other confidential and proprietary information belonging to Acara from Acara's protected computers.

75.

The Acara computer system to which Fishel gained access constitutes a "protected computer" within the meaning of 18 U.S.C.A. § 1030(e) because the computer system is used in interstate or foreign commerce or communication.

76.

Upon information and belief, Fishel shared that information with Thusoo, Alcini, and Balance Staffing to use to compete with Acara.

77.

Fishel's conduct was without authorization or "exceeded authorized access" in that Fishel accessed Acara's protected computer to benefit herself and/or Balance Staffing after her

Page 15 -    COMPLAINT

employment with Acara, and her corresponding right to access Acara's computer system, had ended.

78.

Acara has suffered both a loss in excess of $5,000.00, and potential damage to the integrity of its data and system caused by Defendants' conduct. Such loss/damage includes but is not limited to the costs, including time and expenses that have been required of Acara's managers, employees and consultants to investigate and determine the extent of the access by Defendants; determine what information was deleted or taken; determine whether Defendants altered or downloaded additional confidential information from Acara's computer network; potential loss of valuable business, profits and future profits; and loss of goodwill, in an amount to be determined at trial.

79.

Acara has suffered and will continue to suffer irreparable harm and loss and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

### FIFTH CLAIM FOR RELIEF
#### BREACH OF DUTY OF LOYALTY
#### (FISHEL)

80.

Acara incorporates by reference its allegations set forth this Complaint as if fully set forth herein.

81.

Fishel had a duty of loyalty to Acara by virtue of her duty to act for the benefit of Acara in matters connected with her employment relationship with Acara and by the special confidence reposed in her by Acara in connection with her exposure and access to Acara's confidential, proprietary and trade secret information.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

82.

Fishel breached their duty of loyalty owed to Acara by stealing confidential, proprietary and trade secret information while still employed with Acara to enable her to improperly solicit, accept, service, switch, and/or convert Acara's customers to Balance Staffing in order to unfairly compete against Acara.

83.

Fishel further breached her duty of loyalty owed to Acara by consulting with, performing work for, or otherwise acting in the interests of Balance Staffing, and in direct competition with and against the interests of Acara, while still employed with Acara.

84.

Fishel's breaches of the duty of loyalty have caused Acara to suffer damages.

85.

The actions of Fishel were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Acara.

### SIXTH CLAIM FOR RELIEF
#### UNFAIR COMPETITION
#### (ALL DEFENDANTS)

86.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

87.

Defendants' conduct described herein constitutes an unfair method of competition.

88.

Thusoo, Alcini, and Balance Staffing (collectively, "Balance Defendants") wrongfully and intentionally interfered with Acara's relationships with its employees in order to unfairly compete, gain a competitive advantage in the marketplace, and cause harm or otherwise be detrimental to Acara.

Page 17 -    COMPLAINT

89.

Defendants wrongfully and intentionally took, disclosed, and/or misused Acara's confidential, proprietary, and trade secret information in order to unfairly compete, gain a competitive advantage in the marketplace, and cause harm or otherwise be detrimental to Acara.

90.

Defendants' conduct interfered and continues to interfere with Acara's ability to conduct its business.

91.

As a direct and proximate result of the acts and course of conduct of Defendants described herein, Acara has suffered and will continue to suffer irreparable harm and loss, in addition to damages.

92.

The conduct of Defendants was willful and malicious and demonstrates a complete indifference to or a conscious disregard for the rights of Acara, entitling Acara to an award of punitive damages.

### SEVENTH CLAIM FOR RELIEF
#### BREACH OF CONTRACT – DISCLOSURE AND USE OF CONFIDENTIAL INFORMATION (FISHEL)

93.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

94.

In or about April 2016, Fishel entered into an Employment Agreement with Acara.  See Exhibit A.

95.

The Employment Agreement between Acara and Fishel is a valid and enforceable contract that prohibits Fishel from using or disclosing any of Acara's Confidential Information except for the benefit of Acara.

Page 18 -    COMPLAINT

96.

Acara has met all of its obligations to Fishel under the Agreement.

97.

Upon information and belief, Fishel improperly used and disclosed Confidential Information of Acara to Balance Staffing and the other Defendants.

98.

Fishel's actions constitute a breach of her Agreement with Acara.

99.

As a direct and proximate result of Fishel's actions in breach of the Agreement, Acara has sustained damages.

## EIGHTH CLAIM FOR RELIEF
### BREACH OF CONTRACT – SOLICITING AND ACCEPTING BUSINESS
### (FISHEL)

100.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

101.

In or about April 2016, Fishel entered into an Employment Agreement with Acara. See Exhibit A.

102.

The Employment Agreement between Acara and Fishel is a valid and enforceable contract that prohibits Fishel from soliciting, interfering, or affecting Acara's relationship with its customers or employees.

103.

Acara has met all of its obligations to Fishel under the Agreement.

104.

Upon information and belief, Fishel solicited, interfered, or affected Acara's customers or employees.

Page 19 -    COMPLAINT

105.

Fishel's actions constitute a breach of her Agreement with Acara.

106.

As a direct and proximate result of Fishel's actions in breach of the Agreement, Acara has sustained damages.

## NINTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (ALL DEFENDANTS)

107.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

108.

In or about April 2016, Fishel entered into an Employment Agreement with Acara.  See Exhibit A.

109.

The Agreement between Acara and Fishel is a valid and enforceable contract that prohibits Fishel from using or disclosing any of Acara's Confidential Information except for the benefit of Acara.

110.

Balance Defendants were aware of the existence of the Employment Agreement between Fishel and Acara, as well as the confidentiality provisions contained therein.

111.

By directing and/or encouraging Fishel to use and/or disclose Acara's Confidential Information, Balance Defendants intentionally interfered with the Employment Agreement between Fishel and Acara.

112.

Balance Defendants have no justification for their intentional interference with the Agreement between Acara and Fishel.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

113.

As a direct and proximate result of the actions of Balance Defendants, Acara has sustained damages.

114.

The conduct of Balance Defendants was willful and malicious and demonstrates a complete indifference to or a conscious disregard for the rights of Acara, entitling Acara to an award of punitive damages.

## TENTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS EXPECTANCY
### (ALL DEFENDANTS)

115.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

116.

Acara has existing business relationships or expectancy with its customers with a probability of future economic benefit to Acara.

117.

Defendants knew about Acara's business relationships or expectancy through the Fishel's employment with Acara and as a result of Fishel's duties in providing services to Acara's clients.

118.

Except for the conduct of Defendants, Acara was reasonably certain to have continued the relationship or realized the expectancy.

119.

The foregoing conduct by Defendants was intended to cause the termination of Acara's business relationships or expectancy with one or more of its customers.

120.

Defendants' conduct was and is without privilege or justification.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

121.

Upon information and belief, and as Acara expects to establish upon further investigation and discovery, Defendants had an improper motive and/or used an improper means to interfere with Acara's business relationships with its customers, including breaching Fishel's duty of loyalty, and converting confidential and proprietary Acara business information in order to interfere with Acara's business relations.

122.

As a consequence of the foregoing, Acara has suffered and will continue to suffer irreparable harm and loss.

123.

The conduct of Defendants was willful and malicious and demonstrates a complete indifference to or a conscious disregard for the rights of Acara, entitling Acara to an award of punitive damages.

## ELEVENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (ALL DEFENDANTS)

124.

Acara incorporates by reference its allegations set forth this Complaint as if fully set forth herein.

125.

As a result of their misconduct as alleged in this Complaint, Defendants have been unjustly enriched through the use of Acara's confidential, proprietary and trade secret information by allowing them to avoid developing Balance Staffing's own confidential and proprietary business processes and, upon information and belief, the solicitation, switching and converting of Acara's customers to Balance Staffing.

126.

The retention of these benefits by Defendants under the circumstances is inequitable and, therefore, Defendants should be required to disgorge their wrongful gains.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

## TWELFTH CLAIM FOR RELIEF
### CIVIL CONSPIRACY
### (INDIVIDUAL DEFENDANTS)

127.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

128.

Fishel, Thusoo and Alcini (collectively, "Individual Defendants") each agreed with one another that Fishel would take confidential, proprietary, and trade secret information and then resign her employment with Acara.

129.

Individual Defendants were aware that the confidential, proprietary and trade secret information of Acara would be extremely valuable for Balance Staffing while causing harm to Acara.

130.

Individual Defendants conspired to unlawfully misappropriate, use, and disclose Acara's confidential, proprietary, and trade secret information to further Defendants' interests and cause harm to Acara.

131.

Individual Defendants further conspired to target Acara's customers and clients on behalf of Balance Staffing, including by Fishel who was at that time employed by Acara, in an effort to unfairly compete with, and otherwise cause harm to, Acara.

132.

Individual Defendants further conspired to orchestrate the timing of departure of Fishel from Acara so as to best serve the needs of Balance Staffing and cause the most disruption to Acara in an effort to unfairly compete with, and otherwise cause harm to, Acara.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

133.

Upon information and belief, Defendants further conspired to harm Acara by raiding and recruiting its employees to work for Balance Staffing and in an effort to unfairly compete against Acara.

134.

To that end, Defendants had a meeting of the minds with the object of accomplishing the unlawful conduct stated in this Complaint.

135.

Defendants did perform one or more unlawful, overt acts in furtherance of accomplishing their objective, as set forth herein.

136.

Acara has suffered damages as a result of this conspiracy.

137.

The actions of Defendants, as alleged in herein, were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Acara.

## THIRTEENTH CLAIM FOR RELIEF
### CONVERSION
### (FISHEL)

138.

Acara incorporates by reference its allegations set forth in this Complaint as if fully set forth herein.

139.

Acara's confidential information is an intangible chattel belonging solely and exclusively to Acara.

140.

Acara's confidential information in the personal email accounts of Defendants, or in any other electronic storage medium under Defendants' possession or control, is an intangible chattel belonging solely and exclusively to Acara.

Page 24 -    COMPLAINT

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

141.

By keeping, not returning, and not destroying Acara's confidential information, Defendants have intentionally exercised dominion and control over Acara's property.

142.

Defendants' interference with Acara's right to control its confidential information is serious enough that they may justly be required to pay Acara the full value of the confidential information.

143.

As a direct and proximate result of Defendants' conversion of Acara's confidential information, Acara has suffered damages, which at this time exceed $75,000.00.

144.

Defendants should be permanently enjoined from using, disclosing, or benefiting from, either directly or indirectly, Acara's trade secrets in any manner, and directed to return to Acara all information in any form that contains or reflects the trade secrets. Defendants have already caused considerable mischief by their misconduct and it simply cannot be undone. In addition, Defendants should be temporarily and permanently enjoyed from competing in Acara's industry for at least twelve months. Unless Defendants are enjoyed, Acara will continue to suffer immediate and irreparable injury. Acara has no adequate remedy at law.

**DEMAND FOR JURY TRIAL**

Acara demands a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, having stated its claims for relief, Acara requests judgment as follows:

a.    A preliminary injunction, enjoining and restraining Defendants from directly or indirectly making use of confidential, proprietary and trade secret information belonging to Acara and communicating with any Acara customer for the purpose of soliciting, developing,

Page 25 -    COMPLAINT

maintaining or servicing business in competition with Acara pending the final determination of this action;

b.      A permanent injunction enjoining and restraining Defendants from directly or indirectly making use of confidential, proprietary and trade secret information belonging to Acara;

c.      A permanent injunction enjoining and restraining Defendants from communicating with any Acara customer for the purpose of soliciting, developing, maintaining or servicing business in competition with Acara pending the final determination of this action

d.      An award of actual and compensatory damages, which is in excess of $75,000.00, in an amount to be proven at trial;

e.      An award of exemplary and punitive damages to be proven at trial;

f.      Pre-judgment and post-judgment interest;

g.      An award of reasonable attorneys' fees and costs incurred in this action; and

h.      Such other relief as is just and proper.

DATED: January 14, 2022

FISHER & PHILLIPS LLP

*s/Alexander Wheatley*
Alexander A. Wheatley, OSB #105395
awheatley@fisherphillips.com
Stephen M. Scott, OSB #134800
smscott@fisherphillips.com
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262 Telephone
(503) 242-4263 Facsimile

*Attorneys for Plaintiff*

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

# EMPLOYMENT AGREEMENT

BY AND BETWEEN, SUPERIOR TALENT RESOURCES, INC., a New York Corporation, with its principal offices at 250 International Drive, Williamsville, New York 14231, referred to as the Company, and Rachael Fishel, residing at 16379 SW Gearin Court, Tigard, OR 97223, referred to as Employee.

WHEREAS, the Company is engaged in the State of New York and throughout the United States and in various countries in the business of supplying specialized workforce solutions including staff augmentation, direct placement services, managed service programs, vendor management systems, and recruitment, business process, information technology and human resource outsourcing services, and

WHEREAS, Company has expended substantial time, effort and money in promoting and developing its business in the State of Oregon, as well as nationally, in a highly competitive market, and Company has over the years, acquired and maintained a high standing in its field as a result of extensive market and merchandising development and the development of specialized business techniques, methods and procedures, and

WHEREAS, Company is desirous of employing Employee as a Recruitment Specialist in its Portland, OR office and Employee is desirous of such employment with Company.

IT IS THEREFORE MUTUALLY AGREED, in consideration of mutual terms and conditions of this Employment Agreement ("Agreement") as follows:

1.    EMPLOYMENT, TERM AND COMPENSATION.  Company agrees to employ Employee to work in its Portland, Oregon  office at a weekly salary of $1140.00, paid on a bi-weekly basis as referenced in Employee's offer letter dated April 22, 2016. Although you may receive your bi-weekly pay earlier, the Friday following the end of the prior pay period is the official payday.

This Agreement is effective on February 29, 2016.  Execution and delivery of this Agreement shall be a condition of Employee's employment, although it is acknowledged that Employee may start actual commencement of their duties before such execution and delivery of this Agreement.

Employee accepts such employment and agrees to perform their duties in Company's Portland, Oregon office under the terms and conditions of this Agreement, and agrees to devote their full time to Company's business, and to faithfully perform their duties and render such services as Company may require from time to time, and take such assignment from Company as Company may direct from time to time, including the duty to promote and comply with Company business policies, procedures and practices including ISO policies and procedures and submit periodic reports to Company, as Company may require.

Employee's Initials _____

Employee warrants that at the time of the signing of this Agreement, they are not subject to any written or oral contract, covenant or any other impediment that would inhibit or prohibit the employment herein provided for. Employee warrants that they have not taken, utilized or disclosed, and will not take, utilize or disclose any trade secrets or confidential information of any previous employer and will not engage in any activity that violates an enforceable legal obligation owed to such previous employer. Employee will indemnify and hold harmless Company against any financial losses, claims, damages or liabilities arising from any such impediment or disclosure.

Employee further warrants that they shall not directly or indirectly, during the term of this Agreement, be engaged in any other business activity, or employment, without the written consent of Company. Company expressly acknowledges that this clause is in no way intended to limit Employee's past, present or future investments of a passive nature which are of an investment character only and that the intention of this clause is to bar Employee's active participation in the operation of, or employment by, another business, whether directly or indirectly.

Employee acknowledges and agrees that Company shall have the right to assign them to such duties or assignments which, in Company's judgment, would best serve its business interest. Company acknowledges and agrees that it shall not assign Employee to duties which are not commensurate with Employee's performance and supervisory position with Company.

2.      NON-DISCLOSURE OF INFORMATION.  Employee acknowledges that in the performance of their job duties they may be entrusted with and come to know confidential information relating to details of marketing, merchandising, pricing methods, recruiting, specialized techniques, specialized account development and specialized business procedures of Company, as well as of Company's business accounts and Employee acknowledges the same to be secret and confidential and agrees that they will not disclose nor disseminate such information to others, either directly or indirectly, except as may be required in the performance of their duties for Company.

3.      PERSONAL INFORMATION.  Employee agrees that Company may disclose information about them, including emails, addresses, and other contact or personal identification information, as well as information concerning their work and attendance, dates, and facts about their performance, in connection with their employment with Company.

4.      EXPENSES.  The Employee is authorized to incur reasonable business expenses to perform their duties and promote and develop Company's business, in accordance with Company's business expense policies.  Company will pay for same or reimburse Employee when they have personally paid for same, upon presentation to the Company, on a timely basis, of an itemized expense report and receipts or vouchers for the same.

5.      TERMINATION.  Employee understands that this employment shall be at will. Either Company or Employee may terminate the employment provided in this Agreement,

Employee's Initials _____                    Confidential and Proprietary

with or without cause, without advance notice to the other. No Supervisor or other Company representative has the authority to change Company's policy of at-will employment.

6.    BENEFITS AND VACATION.    Employee will be entitled to paid time off (including holiday pay); medical; and life insurance, in accordance with the customary and prevailing practice of Company, as referenced in Employee's offer letter dated April 22, 2016.

7.    RESTRICTIVE COVENANT.    In the event Employee's employment is terminated with the Company by either Company or Employee, it is agreed as follows:

a.    All documents, records, customer lists, resumes of personnel, notebooks, summaries or any other business records, or copies of the same in Employee's possession, whether prepared by them or others, shall be deemed to be the property of Company and shall be returned to and left with Company.

b.    All accounts shall be the accounts of Company, and Employee shall not be entitled to any additional compensation for pre-existing accounts serviced by them or new accounts generated by them during their employment with Company and such accounts shall remain the accounts of Company after Employee is terminated.

c.    Employee shall not in any way disclose or disseminate to any person, firm, association, or corporation for their benefit, or another's benefit, any and all confidential or secret information including without limitation, customer pricing formulas or formats, customer lists, employee lists or employee resumes/applications or data sheets acquired by them during their employment with the Company, including, but not limited to, information as defined in Paragraph 2 above.

d.    For a period of one year after termination, Employee shall not, within a seventy-five (75) mile radius of Portland, Oregon directly or indirectly, for themselves, or on behalf of, or as an employee of, any other person, firm, association or corporation engage in or be employed by or in any such business in competition with the Company.

e.    For a period of one year after termination, Employee shall not, directly or indirectly, for themselves or on behalf of, or as an employee of, any other person, firm, association or corporation, use, utilize or otherwise profit from the accounts or customer lists, or the resumes or employee lists of the Company.

f.    For a period of one year after termination, Employee shall not in any way interfere with, solicit, or affect Company's relationship with or contracts with, any previous, current, or prospective customer accounts of the Company, of which they gained knowledge by dealing with such accounts as an Employee, or learned of by reason of access to or by reason of copying or memorizing, customer or account lists of the Company. This Section and this restriction shall apply to any account serviced by, gained information on, or worked on in any matter by Employee during their

Employee's Initials _____

Confidential and Proprietary

employment, whether or not such account is within the seventy-five (75) mile radius of Portland, Oregon.

g.    For a period of one year after termination, Employee shall not, in any way, interfere with, solicit, or affect Company's relationship with any of the past, present or future employees of the Company, knowledge of whom or contact with occurred during the Employee's employment, or in the alternative, knowledge of which occurred by reason of Employee's access to resumes and employee lists maintained by the Company while they were employed by the Company.  The restrictive covenant shall not be limited to the seventy-five (75) mile radius of Portland, Oregon.

h.    Employee expressly agrees that the restrictive covenants described in Paragraph 7 shall apply for a one year period following Employee's actual termination of employment, unless otherwise indicated and thus, the terms of Paragraph 7(a), 7(b) and 7(c) shall survive this contract.

i.    In the event of a breach of the above restrictive covenant, Company shall be entitled to injunctive relief against the Employee, in addition to any other claims or causes of action the Company may have in law or equity, and Employee acknowledges that their services under this Agreement are of a special confidential and sensitive character and that a breach of this Agreement will cause irreparable harm, injury and damage to Company.

j.    If the restrictive covenants set forth in this Paragraph are determined to be too broad to be enforceable at law, then the geographical area and/or length of time shall be reduced to such area and/or length of time as shall be enforceable.

k.    By signing this Agreement, Employee acknowledges that the post-termination restrictions in this Agreement are reasonable and do not prevent Employee from engaging in a lawful profession, trade or business; are necessary to protect Company's trade secrets and confidential information; and are intended to prevent unfair competition by Employee for their benefit or for another's benefit.

8.    ASSIGNMENT AND CONFIDENTIALITY.

a.    Employee agrees that any work prepared for Company which is eligible for copyright or patent protection in any country shall be a work made for hire.  If any such work is deemed for any reason not to be a work made for hire, Employee agrees to assign and hereby assigns all right, title and interest in the copyright or patent in such work, and all extensions and renewals thereof, to Company, and agrees to provide all assistance reasonably requested by Company in the establishment, preservation and enforcement of its copyright or patent in such work, such assistance to be provided at Company's expense but without any additional compensation. Employee agrees to waive all moral rights relating to the work developed or produced.

Employee's Initials _____

Confidential and Proprietary

b.      Employee will assign and hereby does assign to Company, as its exclusive property, their entire right, title and interest in all of those inventions, innovations and ideas, developed or conceived by them solely, or jointly with others, during the term of their work for Company, if they: 1). Are made with, in whole or in part, Company's equipment, supplies, facilities, trade secrets, or confidential information; or 2). Relate to Company's business or to Company's actual or demonstrably anticipated research or development; or 3). Result from any work performed by them for Company.

c.      Employee agrees to execute all papers and otherwise provide proper assistance at Company's request and expense, during and subsequent to their work for Company to enable Company or its nominees to obtain patents, copyrights and legal protection for inventions, innovations, or ideas in any country.

d.      Employee agrees that all notes, memoranda, presentation materials, training materials, computer programs or other data prepared or produced in the performance of their work for Company shall be the sole property of Company and shall not be disclosed to anyone outside of Company except for such other employees of Company having a "need to know" for purposes of performance of services for Company.

9.      CONTRACTUAL AUTHORITY.   Employee shall not bind Company to any contract or agreement on behalf of Company without the written consent of Company, specifically the President of the Company, nor shall they hold themselves out to have authority to do the same.

10.     AFFILIATED COMPANIES. The term "Company" as used in Section 2, "NON-DISCLOSURE OF INFORMATION" and in Section 7, "RESTRICTIVE COVENANT" shall also include SUPERIOR TALENT RESOURCES, INC., SUPERIOR WORKFORCE SOLUTIONS, INC., SUPERIOR SHARED SERVICES, INC., SUPERIOR DESIGN CO., INC., SUPERIOR IT INNOVATIONS, INC., SUPERIOR HR SOLUTIONS, INC. and SDI INTERNATIONAL, CORP., as well as any other parent, subsidiary, sister, or affiliated corporation of Company.

11.     GENERAL PROVISIONS.

a.      This Agreement contains the entire Agreement between the parties and the parties expressly agree that the only representations upon which they rely by entering into this Agreement are those contained in this Agreement and that this Agreement may be changed only by written consent of both parties.

b.      The restrictive covenants and other terms of this Agreement shall remain in effect even though Employee's position, job duties or title with Company changes, unless Company specifically releases Employee from one or all provisions of this Agreement.

Employee's Initials _____

Confidential and Proprietary

c.   This Agreement shall be deemed to be severable and the unenforceability of any part of this Agreement shall not affect the enforceability of the remainder of this Agreement.

d.   Waiver of any breach of this Agreement shall not be construed as a waiver of any subsequent breach or a waiver of any other term or condition of this Agreement.   Delay or failure to exercise any right or remedy under this Agreement shall not impair such right or remedy, or be construed as a waiver thereof or as acquiescence in a default.

e.   This Agreement shall be binding upon and inure to the benefit of the parties' successors and assigns.

f.   This Agreement shall be interpreted under the laws of the State of New York, regardless of that state's choice of law provisions.

IN WITNESS WHEREOF, the parties have executed this Agreement.

**SUPERIOR TALENT RESOURCES, INC.**           **EMPLOYEE**

Brent Henderson                                               Rachael Fishel
Chief Human Resources Officer

5/2/16                                                                4/25/16
Date                                                                   Date

Confidential and Proprietary



fisherphillips.com

**Portland**
111 SW Fifth Avenue
Suite 4040
Portland, OR  97204-3604

(503) 242-4262 Tel
(503) 242-4263 Fax

**Writer's Direct Dial:**
(503) 205-8094

**Writer's E-mail:**
smscott@fisherphillips.com

November 29, 2021

*Via Certified Mail*

Sophia Allard, Esq., General Counsel
Balance Staffing
2800 N Cherryland Avenue
Stockton, CA 95215

Re:    **Superior Talent Resources, Inc. - Cease and Desist Demand**

Ms. Allard:

Please be advised that this firm represents Acara Solutions, Inc. ("Acara"). It has been brought to our attention that Balance Staffing hired one of Acara's former employees, Rachael Fishel. It has also been brought to our attention that she is using confidential information, obtained as an employee of Acara, to solicit Acara's employees. This is not only in breach of the law, but in breach of her Employment Agreement, which includes restrictive covenants regarding solicitations, the prohibition against using Acara's information, and the return of company property.

Acara has demanded that Ms. Fishel immediately cease and desist from using confidential information, including the names and contact information of its employees and former employees that she obtained during her employment, as well as Acara's confidential pricing information. We have also advised her that Acara may pursue damages for her ongoing use of confidential information. Similarly, to the extent that Balance Staffing is benefiting from Ms. Fishel's use or disclosure of confidential information and/or trade secrets, we will seek to recover those damages from Balance Staffing directly, along with all available penalties and attorney fees.

It is my hope that this can be resolved short of litigation. However, for that to even be a consideration, all solicitation of Acara's employees by Ms. Fishel must immediately cease and desist. Ms. Fishel must also immediately cease and desist her usage of Acara's confidential information and trade secrets. Finally, she must return of all of Acara's confidential information and confirm her intention to comply with her legal obligations to Acara.

Sincerely,

Stephen M. Scott
Attorney
For FISHER & PHILLIPS LLP

**Fisher & Phillips LLP**

Atlanta • Baltimore • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Fort Lauderdale • Gulfport • Houston
Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Portland • Sacramento • San Antonio • San Diego • San Francisco • Seattle • Tampa • Washington, DC



fisherphillips.com

Portland
111 SW Fifth Avenue
Suite 4040
Portland, OR  97204-3604

(503) 242-4262 Tel
(503) 242-4263 Fax

Writer's Direct Dial:
(503) 205-8094

Writer's E-mail:
smscott@fisherphillips.com

November 29, 2021

*Via E-Mail*

Rachael Fishel
16379 SW Gearin Court
Tigard, OR 97223
rachaelfishel@gmail.com

Re:    **Demand for Return of Property and Notice of Obligations**

Dear Ms. Fishel:

This law firm represents Acara Solutions, Inc. ("Acara" or the "Company").  Please direct future communications to me. I am writing because it has come to Acara's attention that you have downloaded and improperly taken and stored Acara's trade secret and proprietary information. Specifically, Acara has evidence that you downloaded and took the following (collectively "Property"):



Fisher & Phillips LLP

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC • Woodland Hills

Rachael Fishel
November 29, 2021
Page 2



These documents include contact information regarding employees, former employees, the amount these employees are paid, the years of experience for these current and former employees, along with Acara's new hire orientation and benefits. This information is exactly what a "*Senior Recruiter for Balance Staffing[1]*" would need to kickstart their recruitment career. It is clear that your theft of Company property and Company Trade Secrets was intentional, and premeditated over the course of 9 days. Given this was sent to your personal Gmail account, it is also our belief that you retain access to that information outside of Acara's systems.

I am writing to demand that you return the Property to the Company and confirm that you have no other copies of the Property and otherwise do not retain possession of any other trade secret or confidential property or information belonging to Acara. The Company demands that you **immediately cease and desist** from using any of the Company's confidential information, trade secrets, and work product for any purpose.

It is our hope that we can resolve this issue amicably, but, if it is required to do so, Acara stands ready to take any actions necessary to protect its property interests, including by pursuing civil and criminal enforcement of Acara's legal rights.

### Applicable Law

Your continued retention of the Company's Property post-employment, and, indeed, taking the Property from the Company's systems without authorization while employed, violates the Computer Fraud and Abuse Act (CFAA), the Defend Trade Secrets Act (DTSA), the Uniform Trade Secrets Act (UTSA), as well as other criminal and civil statutes. These statutes prohibit individuals from accessing computers without or in excess of authorization, misappropriating trade

---

[1] Which is what you hold yourself out to be on LinkedIn and Facebook.

Rachael Fishel
November 29, 2021
Page 3

secrets, and otherwise taking or misusing property like the Property you took from the Company's systems. The Property is unquestionably the property of Acara, and you have no entitlement to continued possession of the Property.

The DTSA and UTSA in particular provide for very harsh penalties for misappropriation of trade secrets. Under the UTSA, a "trade secret" is defined in Civil Code section 3426.1(d) as information, including a formula, pattern, compilation, program, device, method, technique or process, that:

1.      Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2.      Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The DTSA provides the same definition, and both statutory regimes protect the Property you misappropriated from Acara's systems.

Should Acara be forced to pursue legal action against you, it will be able to recover actual damages as well as attorney fees and exemplary damages and will be entitled to injunctive relief. The DTSA and UTSA also both provide for severe criminal penalties. For instance, the DTSA provides for a potential prison term of up to 10 years and fines of up to $5 million.

Moreover, the UTSA and DTSA provide expansive scopes of liability for misappropriation by "permit[ting] trade secret owners to sue not only for the actual or threatened 'disclosure or use' of their trade secrets 'without express or implied consent,' but also for the 'acquisition' of their trade secrets by 'a person who knows or has reason to know that [they] w[ere] acquired by improper means." This means that not only are you liable for civil and criminal penalties for misappropriation, any future employer you work for may also be liable should you attempt to use Acara's trade secret information in the course and scope of your employment for that employer. Acara will be sure that any future employer of yours is aware of your obligations and the threat of misuse due to your unauthorized taking of the Property from Acara's systems.

**Breach of Contract**

I recognize that the laws outlined above are hard to conceptualize. Fortunately for both of us, there is also an Employment Agreement that addresses your improper conduct. On April 25, 2016, you entered into an Employment Agreement. The emails you forwarded to yourself are in breach of Sections 2, 7, and 8 of the Employment Agreement. As such, the Company is entitled to injunctive relief against you, in addition to damages stemming from its Breach of Contract claim. Since the emails speak for themselves, the liability is significant.

**Fulfilling Your Obligations**

Acara demands that you contact me on or before **December 3, 2021**, to discuss the return of the Property.  Due to the electronic, and therefore transmissible, nature of the Property taken, please do not simply delete this information. Rather, you must contact me so we can coordinate the satisfactory return of the Company's electronic documents in a forensically sound manner that

Rachael Fishel
November 29, 2021
Page 4

preserves the integrity of all evidence associated with your taking, possession, and use of the information. Once the Company's confidential information is forensically retrieved from the electronic media or space on which you have stored such information, I will coordinate with you or your counsel regarding the permanent deletion of the Company's information from all of your electronic devices and other electronic storage spaces. Upon your return of all of the Company's confidential information, you will be required to sign a sworn statement attesting that you are not any longer, directly or indirectly, in possession, custody, or control of the Company's confidential information and that you have not provided any such information to any third party.

Please note that, given the fact that the Company's investigation is not yet complete, nothing contained or suggested in this correspondence as a potential acceptable resolution is intended, nor shall it be construed, as a waiver of any of the Company's rights or claims for damages should the Company's investigation reveal additional violations by you of your obligations to the Company and applicable state and federal law. If it does not appear that these matters can be immediately resolved, the Company will proceed, without hesitation, to file a lawsuit against you and seek from the court a temporary restraining order and/or preliminary injunction.

### Preservation Obligations

Lastly, until your full return to the Company of all of its confidential and trade secret information and documents is complete, you must ensure that all Company-related information and documents in your possession, custody, or control are properly preserved. **This letter serves as a notice to you of your legal obligation to preserve**, in an unaltered and forensically sound form, any documents related to the Company and its business operations, customers, and software, as well as to the Property. This includes, but is not limited to, forensic preservation of everything in your personal and business email accounts, all contents of any cloud storage account(s) you maintain, all contents of your personal and business computers and electronic devices, and all other paper or electronic documents you obtained by virtue of your relationship with the Company, as well as all correspondence (whether by email, letter, text message or otherwise) related in any way to the Company or its customers.

In this regard, the term "document" should be interpreted broadly to include, but not be limited to, writings, records, files, correspondence, reports, memoranda, calendars, diaries, minutes, electronic messages, voice mail, electronic mail; telephone messages, records, or logs; computer and network activity logs; data, hard drives, backup data, removable computer storage media, such as thumb or pin drives, tapes, discs and cards, printouts, document image files, web pages, data basis, spread sheets, software, books, ledgers, journals, orders, invoices, bills, vouchers, checks, statements, worksheets, summaries, compilations, computations, charts, diagrams, graph presentations, drawings, films, digital or process photographs, video, phonographic; tape or digital recordings or transcripts thereof; drafts, jottings, notes, and any other tangible things. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, are also included in this definition.

The laws and rules prohibiting destruction of evidence are very strict and apply to electronically-stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, you must take every reasonable step to forensically preserve this information. This includes, but would not be limited to, an obligation to discontinue all data destruction and overwriting or automatic deletion

Rachael Fishel
November 29, 2021
Page 5

practices. Should you fail or refuse to comply with this demand to not spoil evidence, I can assure you that the Company will consider all applicable means to protect its rights to the fullest extent of the law.

**Conclusion**

By this letter, the Company is giving you an opportunity to resolve these disputes, by responding to this correspondence by **5:00 p.m. on December 3, 2021,** to coordinate your return of the Property and any other Company confidential information in your possession, custody, or control, and affirming your intention to comply with your legal obligations to Acara. If not, we can assure you that the Company will pursue every legal remedy available to it to protect its rights and its property. We hope that will not be necessary. Your immediate attention to and cooperation in this matter is expected and appreciated.

Please feel free to contact me should you have any questions.

Sincerely,

Stephen M. Scott
Attorney
For FISHER & PHILLIPS LLP

SMS:sp
Encls: Employment Agreement

**Exhibit B**
**Page 6 of 6**